## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Alfred Pirri, Jr. | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 1:19-cv-180** |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Lori Cheek, Locke Raper, | ) | **JURY TRIAL DEMANDED** |
| Charlie Kickham, Joanne Richards, | ) | |
| and Cheek'd, Inc | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Alfred Pirri, Jr. ("Plaintiff Pirri") , by and through his undersigned attorney, as and for his complaint against Defendants Lori Cheek ("Defendant Cheek"), Joanne Richards ("Defendant Richards"), Locke Raper ("Defendant Raper"), Charles Kickham ("Defendant Kickham") and Cheek'd, Inc. ("Defendant Cheek'd, Inc.") (collectively, "Defendants"), alleges as follows.

## <u>NATURE OF ACTION</u>

1.      This is an action for (1) the correction of the named inventors listed on U.S. Patent No. 8,543,465 under 35 U.S.C. § 256, (2) breach of a medical professional's fiduciary duty of confidentiality under New York common law, (3) unjust enrichment under New York common law, (4) misappropriation of trade secrets under New York common law, (5) conversion under New York common law, and (6) fraud under New York common law.

1

**PARTIES**

2.        Plaintiff Alfred Pirri, Jr. is a person residing at 131 Glen Drive, Ridge, New York.

3.        Upon information and belief, Defendant Lori Cheek is a person residing at 104 Foryth Street, New York, New York.

4.        Upon information and belief, Defendant Charles Kickham is a person residing at 260 Elizabeth Street, New York, New York.

5.        Upon  information and belief, Defendant Locke Raper is a person residing at 140 East 46th Street, New York, New York.

6.        Defendant Cheek'd, Inc. is a New York Domestic Business Corporation with a principal place of business at 104 Forsyth Street, New York, New York.

7.        Upon information and belief, Defendant Joanne Richards is a licensed clinical social worker who resides at 16010 E. Tumbleweed Drive, Fountain Hills, Arizona.

**JURISDICTION AND VENUE**

8.        This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201 (Creation of Remedy), 28 U.S.C. § 1338 (Patents), 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

9.        This Court has personal jurisdiction over Defendants Lori Cheek, Charles Kickham, Locke Raper and Cheek'd, Inc. because each of them is a resident of New York County.

10.        This Court has personal over Defendant Joanne Richards because she committed tortious acts in New York State against a New York resident while she was residing in the State

of New York and while she was employed as a licensed social worker at Pederson Krag Center,

Inc., located at 11 Route 111, Smithtown, New York.

11.     Venue is proper is proper in this judicial district pursuant to 28 U.S.C. § 1391 for

the same reasons that personal jurisdiction over Defendants in New York is proper and because a

substantial part of the events giving rise to the claims herein occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

**A.     US Patent No. 8,543,465**

12.     A copy of US Patent No. 8,543,465 ("the '465 patent") to Cheek et al. is included

as **EXHIBIT A**.

13.     The '465 patent  was issued on September 24, 2013 and lists the inventors as Lori

Cheek, Locke Rapier, and Charlie Kickham. The '465 patent is assigned to Cheek'd, Inc. The

'465 patent is entitled "Method and Software Product for Personalized Meeting and Relationship

Establishing.

14.     In colloquial terms, the '465 patent claims a method of 'dating-in-reverse'. A

potential suitor hands an information card to a total stranger that refers him or her to a website

whereby the stranger can choose, or choose not to, to contact the person who gave him or her the

card.

**B.     The Mr. Pirri's Conception of 'Online Dating in Reverse'**

15.     Plaintiff Pirri first conceived of  'Online Dating in Reverse'.

16.     In the mid-2000's, Plaintiff Pirri was a single man living in the New York tri-state area, who keenly noted through his personal experiences that, although there were plenty of single people living in New York City, there were very few efficient ways a person could use to meet other single people in order to date them.

17.     A person could meet people in a bar, but bars are not the best place to meet people. Bars are noisy. Conversations are awkward and superficial and there is always the overwhelming competition from other would-be suitors. In a crowded bar, a person could be standing 10-feet from the person's future spouse and never know it.

18.     During the mid-1990s, online dating was added to arsenal those who were seeking to meet people upon subscribing to dating websites, like Match.com or Yahoo Personals.

19.     However, online dating platforms had many flaws. One could scroll through dozens and dozens of profiles to try and meet people but reviewing the electronic profile of potential dates was risky and impersonal. People were notoriously untruthful about their age or backgrounds, or posted pictures of themselves that looked nothing like them.

20.     Plus, a person would have to go through several email exchanges and a live date or two to discover the disappointing truth. Each one of these encounters would take place over the course of a week or two (or maybe months) and involve a substantial investment of time and emotional energy.

21.     To Plaintiff Pirri, the entire internet dating process seemed to work backwards.

22.     Plaintiff Pirri thought to himself, that it would be much more effective if the online dating process could be reversed, that is to meet a person first to see what they really

looked or acted like, so that a person could ascertain such intangible, ethereal qualities such as the way they walked or the manner in which they engaged in a casual conversation.

23.     Only after this initial, face-to-face encounter (when one's own instincts told a person that there was chemistry and thus a reason to pursue the other person) would someone even need to go through the process of learning about that new love interest's background and profile. But, how would he accomplish these goals, Plaintiff Pirri thought to himself, and how would a new process be any better than, say, going to a bar, or signing up for online dating?

24.     Based on his past experiences with handing out business cards in professional settings, Plaintiff Pirri knew that business cards were a very casual but effective way of introducing himself to a potential client or employer and providing some means of allowing them to remember him and contact him if they chose to do so.

25.     What if, instead of sitting in front of a computer looking for people to date, a person could simply meet people on the street, at a meeting, or at a ballgame and if a person saw someone the person liked, the person could hand out his/her card to them with some information about him/herself? This seemed a lot less intrusive and intimidating than simply going up to a person and forcing a conversation on them.

26.     But then, Plaintiff Pirri thought, you were staking your entire fate on a standard business-size card, which measures no more than 3.5 x 2 inches – hardly enough space to tell your life story or even describe who your favorite sports team was.

27.     That is, unless, the business-size card was somehow a key to unlocking additional information, and that's when the idea occurred to Plaintiff Pirri. What if the business-size card

contained some sort of code that the recipient could enter onto a website which would unlock a much more extensive and entertaining profile of the person passing out the card?

28.     To make sure that the recipient remembered the person passing out the card enough to even want to enter the code onto a website in the first place, the card could contain some witty quotes or passages that recalled the person passing out the card.

29.     To make money – because who would want to buy such an idea if it could not generate money – the person passing out the card would pay a fee to create a profile on the website and the cards and the recipient would pay money for accessing the profiles unlocked by the code on the business-size cards that she or he had received. Plaintiff Pirri had finally solved the problem that had been bothering him about dating.


**C.**     **Plaintiff Pirri's Documentation of 'Dating-in-Reverse'**

30.     After conceiving these novel ideas for his dating website application, Plaintiff Pirri committed his ideas on paper before a notary public on September 18, 2006. A copy of this document is included as **Exhibit B**.

31.     On October 27, 2006, Plaintiff Pirri also retained services of a patent attorney who conducted a patentability search to ensure that his idea is, indeed, novel and, as such, could be patented.

32.     The patentability search report dated January 24, 2007 confirmed that no identical nor similar ideas were ever disclosed in registered patents, pending patent applications and nonpatent publications.

**D.**   **Plaintiff Pirri Conceived that it Could Apply To Business Networking**

33.    After conceiving these novel ideas for his dating website application, Plaintiff

Pirri realized that the same ideas could be applied to business networking.

34.    Plaintiff Pirri committed his ideas on paper before a notary public on November

9, 2006. A copy of this document is included as **Exhibit C**.


**E.**   **Plaintiff Pirri Could Not Pursue His Dreams**

35.    After doing research to prepare a business plan to patent his invention and fund a

start-up based on his ideas, Plaintiff Pirri was forced to put his plans on hold due to some family

health and priority issues.

36.    To cope with his family issues, Plaintiff Pirri decided that he needed to see a

licensed professional to help him through these issues. This occurred in the Fall of 2008.


**E.**   **Plaintiff Pirri Confided His Ideas to Defendant Richards**

37.    Since he was living in the area, Plaintiff Pirri decided to seek counseling at the

mental health facility at Pederson Krag Center Inc., located at 11 Route 111, Smithtown, New

York, where he was treated by Defendant Richards between September 2008 to May 2013.

38. During their first few meetings, they spoke about Plaintiff Pirri's background,

including Plaintiff Pirri's aspirations and future plans.

39.    It was in this context that Plaintiff Pirri first provided a detailed disclosure of his

idea for a dating website and application to Defendant Richards, which he described to her as

"online dating in reverse" – the exact description used by Defendant Cheek later on her "Shark

Tank" appearance. Plaintiff Pirri also told Defendant Richards about the business networking ideas.

40.    Before Plaintiff Pirri disclosed his idea to Defendant Richards, he asked and had her full assurance that she would not disclose the idea to anyone.

**F.    Defendant Richards Conveyed Plaintiff Pirri's Ideas to Defendant Lori Cheek**

41.    Unbeknownst to Plaintiff Pirri, and in violation of her ethical and fiduciary duties as a medical professional to maintain the confidentiality of his communications with her, Defendant Richards disclosed detailed information about Plaintiff Pirri's idea for a dating website and application to a social acquaintance.

42.    In subsequent sessions with Plaintiff Pirri (at or around October 2008), Defendant Richards confessed to him that she had disclosed his ideas for both a dating website and application and business spin-off website and application to that social acquaintance. Defendant Richards described this person as a New York architect and interior designer who was always looking for the next new idea.

43.    That social acquaintance was no other than Ms. Lori Cheek, one of the so-called inventors of the Cheek'd dating website and application. Defendant Richards also went on to say that Defendant Cheek thought that Plaintiff Pirri's idea was a great idea.

44.    Plaintiff Pirri was furious. Not only had Defendant Richards breached her sacred duty of confidentiality to him as her patient, but she disclosed the very ideas that he had originated and upon which he planned to build a career.

45.     When Plaintiff Pirri confronted Defendant Richards on her gross violations of his trust and the potentially catastrophic consequences of her actions in disclosing his ideas without some guarantee that someone would not steal his ideas, Defendant Richards constantly kept assuring Plaintiff Pirri that Defendant Cheek would not make use of his idea, making such assurances as "Don't worry, she's not going to do anything with your idea,", "She just thought them to be great ideas," "She isn't going to pursue them," or "Nothing to worry about."

46.     Lulled into this false sense of security, Plaintiff Pirri in or around August 2009 continued discussing his ideas for a dating website and business networking spin-off again with Defendant Richards with the idea of starting a business about it. Defendant Richards' response was "I wouldn't do that. It's just going to be very stressful for you. Just forget about that idea."

47.     Plaintiff Pirri continued his invention conversations throughout his sessions with Defendant Richards, always given the same self-serving advice that, "Because of the stress that it would cause you, just forget those ideas." Unbeknownst to Plaintiff Pirri, this recommendation, while represented as professional advice meant to treat Plaintiff Pirri, was a pretext meant to assist Defendant Cheek in completing her theft of Plaintiff Pirri's idea and to prevent Plaintiff Pirri from discovering Defendant Cheek's theft and Defendant Richards' role in that theft.

48.     Because of his trust in her as his social worker, Plaintiff Pirri was talked out of maintaining any sort of disciplinary proceedings against Defendant Richards and any kinds of legal actions against her and Defendant Cheek.

49.     An online professional biography authored by Defendant Richards characterizes these years as "arguing with reality".[1] Since the website was altered in the last year, a copy of the

---

[1] http://thework.com/en/facilitator/joanne-richards (accessed December 7, 2017). The current webpage has her online professional biography but the wording is different.

original is included as **Exhibit D**. It was in these years where Defendant Richards deceived

Plaintiff Pirri.


    **G.**    **Defendant Lori Cheek Secured the '465 Patent Based on Mr. Pirri's Ideas**

50.    Soon after Defendant Richards first talked Plaintiff Pirri out of maintaining any

legal or disciplinary actions, and unbeknownst to Plaintiff Pirri, Defendants Cheek, Kickham,

Raper and Cheek'd, Inc., took Plaintiff Pirri's idea for a dating website and app and claimed it as

their own.

51.    In a patent application filed with the United States Patent and Trademark Office

("USPTO"), these Defendants all claimed to have been the inventors of the dating website and

application that Plaintiff Pirri had invented, while excluding Plaintiff Pirri. That application

would eventually issue as the '465 patent, discussed above.

52.    The '465 patent disclosed the very invention that Plaintiff Pirri had conceived,

that Plaintiff Pirri had committed to paper before a notary public more than two years before

Defendants Cheek, Kickham, Raper and Cheek'd, Inc. ever submitted their application to the

USPTO, that Plaintiff Pirri had disclosed in confidence to Defendant Richards, and that

Defendant Richards had improperly disclosed to Defendant Cheek in violation of her

fiduciary duties to Plaintiff Pirri.

53.    For demonstration, a claim chart showing many of the the elements of Claim 1 of

the '465 patent (**Exhibit A**) against Plaintiff Pirri's September 18, 2006 notarized invention notes

(**Exhibit B**) is as follows.

| Element from Claim 1 of the '465 Patent | Corresponding Text from Plaintiff Pirri's Invention Notes |
|---|---|
| A method for personal meeting comprising the steps of: (Col. 10, ln 28). | a dating service idea |
| an initiator developing a profile with a central organization (Col. 10, ln 29). | ...on the internet....<br><br>The card also would have personal information to give the receiver of one some background info before logging on to *the connected web site*. |
| the central organization providing the initiator by computer with a number of cards on which are printed at least an icebreaker, a website designation, and a code comprising elements corresponding to the icebreaker printed on the card (Col. 10, ln 30-34). | tied into wallet size number coded personal information cards....On this card is a code number and/or bar code |
| the initiator giving the card to at least one recipient (Col. 10, ln 35). | The cards are used to meet someone you may be interested in dating / meeting.<br><br>*The card* also would have personal information *to give the receiver* of one some background info before logging on to the connected web site. (emphasis added) |
| the recipient going to the website designated on the card (Col. 10, ln 36). | the web site brings up personal information and profile and contact information etc. of each card member. |
| the recipient entering the code printed on the card at the designated website (Col. 10, ln 37-38). | which when the number is entered on the web site or swiped to read the bar code, |
| the recipient being given access to the initiator's profile with the central organization (Col. 10, ln 39-40). | the web site brings up personal information and profile and contact information etc. of each card member. |
| the central organization organization displaying the compiled data by computer to the initiator. (Col. 10, ln 56-57). | the web site brings up personal information and profile and contact information etc. of each card member. |

54.     It is a foundational principal of patent law that where a person contributes to the conception of at least one claim, then that person must be included as a co-inventor. *See, e.g.*, *Ethicon v. US Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998).

55.     As clearly is shown, many of the elements of Claim 1 of the '465 patent were recorded in Plaintiff Pirri's invention notes. Plaintiff Pirri discussed these notes with his therapist, Defendant Richards, who in turn, relayed them to Defendant Cheek.

56.     It is no accident that Defendant Cheek filed for a patent application claiming these ideas.

### H.     Defendant Cheek Fraudulently Claims Ownership Of The Ideas

57.     Soon after Defendant Richards first talked Plaintiff Pirri out of maintaining any legal or disciplinary actions, and unbeknownst to Plaintiff Pirri, Defendants Cheek, Kickham, Raper and Cheek'd, Inc., took Plaintiff Pirri's idea for a dating website and app and claimed it as their own.

58.     Plaintiff Pirri had no idea that this had happened because he had placed his trust in Defendant Richards that no one to whom she disclosed his invention would make use of that invention – that is, until on or about July of 2015 when, while watching re-runs of the popular TV show Shark Tank, he saw Defendant Lori Cheek introducing Plaintiff Pirri's invention as her own to the hosts of the show and to millions of viewers around the world.

59.     To add insult to injury, Defendant Cheek even described "her" invention on 'Shark Tank' using the same exact phrase with which Plaintiff Pirri described his invention to Defendant Richards – "online dating in reverse". Defendant Cheek has carried her fraud to the

internet - posting a number of youtube videos, media interviews, world speaking engagements, and Oprah Winfrey's talk-show - all the while claiming that the idea for "online dating in reverse" was hers all along.[2]

60.     Since Plaintiff Pirri made that discovery, Defendants Cheek, Kickham, Raper and Cheek'd, Inc. have continued on with their deception of the public by giving interviews, recruiting investors, developing a business, and building a brand around Plaintiff Pirri's ideas – all the while failing to disclose to the world that the ideas had been stolen from Plaintiff Pirri.

61.     As soon as Plaintiff Pirri witnessed Defendant Cheek shamelessly deceiving the investors, the United States Patent and Trademark Office, and the entire nation into believing that she was a true inventor of the novel ides, Plaintiff Pirri decided to take immediate action.

62.     Plaintiff Pirri immediately contacted Defendant Richards, who, at that time, moved to the State of Arizona and continued her professional career there. During the telephone conversation with Defendant Richards, Plaintiff Pirri once again reminded Defendant Richards of her breach of her duty of confidentiality and pointed out that, Defendant Cheek's success was a direct consequence of Defendant Richard's breach of her duty to maintain confidentiality of the information obtained by her during the sessions with her patients.

63.     Defendant Richards concluded her conversation with Plaintiff Pirri by promising to reach out to Defendant Cheek to resolve the situation. However, Plaintiff Pirri never heard from Defendant Richards ever again.

64.     Since those conversations, the harm to Plaintiff Pirri has increased because Defendants have continued to use Plaintiff Pirri's ideas to develop similar social networking

_____

[2] See, e.g., https://www.youtube.com/watch?v=r_Z8vnbO1Nc (last accessed December 9, 2018); https://www.youtube.com/watch?v=44vgaUuXTuk (last accessed December 9, 2018); and, https://www.youtube.com/watch?v=s2ujrOWk7mY (last accessed December 9, 2018).

applications and websites, including a business related spin-off called "Networkd" using the

website "www.networkd.io."

## FIRST CLAIM FOR RELIEF
### (CORRECTION OF THE NAMED INVENTORS OF THE '465 PATENT UNDER 35 USC § 256)

65.    Plaintiff repeats and realleges the allegations set forth in each of the preceding

paragraphs as if fully set forth herein.

66.    Defendants Cheek, Kickham, Raper and Cheek'd filed a patent application that

issued as the '465 patent.

67.    Plaintiff Pirri contributed to the conception of the claims of the '465 patent.

68.    Plaintiff Pirri's novel ideas were communicated to Defendant Cheek via Plaintiff

Pirri's therapist, Defendant Richards.

69.    Whether intentional or by accident, Defendants omitted Plaintiff Pirri as an

inventor on the '465 patent while prosecuting the patent with the USPTO.

70.    Plaintiff Pirri is entitled for this court to correct the inventorship of the '465 patent

by including Plaintiff Pirri as an inventor under 35 USC § 256.

## SECOND CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

71.    Plaintiff Pirri repeats and realleges the allegations set forth in each of the

preceding paragraphs as if fully set forth herein.

72.    Plaintiff Pirri conceived of the idea that is the subject matter of the '465 patent.

73.     Plaintiff Pirri communicated that idea to Defendant Richards under a fiduciary duty owed by Defendant Richards to Plaintiff Pirri to not disclose any communications to third parties.

74.     Defendant Richards proceeded to breach her fiduciary duty to Plaintiff Pirri by disclosing that idea to Defendant Cheek

75.     Based on information and belief, Defendant Cheek then communicated that idea to Defendants Kickham, Raper and Cheek'd, Inc.

76.     Based on this unlawful disclosure of Plaintiff Pirri's confidential communications, Defendants Cheek, Kickham, Raper and Cheek'd were able to obtain the '465 patent and to monetize that patent.

77.     Plaintiff Pirri was the only person entitled to obtain the '465 patent and to monetize that patent.

78.     Defendants Cheek, Kickham, Raper and Cheek'd, Inc. were therefore unjustly enriched at Plaintiff Pirri's expense.

79.     It is against equity and good conscience to permit Defendants to retain any rights to the '465 patent or any rights to monetize that patent.

80.     Plaintiff Pirri is therefore entitled to full restitution and/or disgorgement of Defendants' ill-gotten profits.


**THIRD CLAIM FOR RELIEF**
**(MISAPPROPRIATION OF TRADE SECRETS)**

81.     Plaintiff Pirri repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

82.     Plaintiff Pirri possessed a trade secret in his idea for an online dating website and app.

83.     Plaintiff Pirri took measures to protect the confidentiality of that trade secret by never disclosing that information except subject to reasonable confidentiality restrictions.

84.     Plaintiff Pirri disclosed his trade secret in the online dating website and app to Defendant Richards during his sessions with Defendant Richards.

85.      Because his disclosure was made while he was being treated by Defendant Richards and Plaintiff Pirri understood that licensed clinical social workers such as Defendant Richards are bound by a duty of confidentiality, Plaintiff Pirri had a reasonable expectation that his disclosure to her would be kept confidential.

86.     Defendant Richards disclosed Plaintiff Pirri's trade secret to Defendant Cheek.

87.     Upon information and belief, Defendant Cheek disclosed Plaintiff Pirri's trade secret to Defendants Kickham, Raper and Cheek'd, Inc.

88.     Defendants Cheek, Kickham, Raper and Cheek'd, Inc. proceeded to use Plaintiff Pirri's trade secret that had been obtained in breach of a duty of confidentiality to apply for, and obtain issuance, of the '465 patent and to monetize that patent.

89.     Because the rights to apply for a patent to his online dating website and app and the right to monetize that idea and patent belonged exclusively to Plaintiff, Defendants' misappropriation of Plaintiff Pirri's trade secret has harmed Plaintiff in an amount to be established at trial, but in any event no less than $5,000,000.

## FOURTH CLAIM FOR RELIEF
### (CONVERSION)

90.     Plaintiff Pirri repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

91.     Plaintiff Pirri had a possessory right and interest in the idea for the dating website and app disclosed in the '465 patent.

92.     By obtaining the '465 patent, Defendants have excluded Plaintiff Pirri from any rights to the dating website and app and thus have interfered with Plaintiff Pirri's rights.

93.     As a result of Defendants' illegal conversion of his rights, Plaintiff Pirri has suffered damages in an amount to be established at trial, but in any event no less than $5,000,000.

## FIFTH CLAIM FOR RELIEF
### (BREACH OF THE FIDUCIARY DUTY OF CONFIDENTIALITY)

94.     Plaintiff Pirri repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

95.     Defendant Richards treated Plaintiff Pirri as her patient at the Pederson Krag Center Inc. between September 2008 and May 8, 2013.

96.     Based on their relationship as licensed clinical social worker and patient, Defendant Richards owed Plaintiff Pirri a fiduciary duty, which included a duty to not disclose to third parties any communications she learned from Plaintiff Pirri during her treatment of Plaintiff Pirri and a duty to disclose any breaches of that duty to Plaintiff Pirri.

97.     During a series of sessions held in October of 2008, Plaintiff Pirri disclosed to Defendant Richards his idea for a dating website and app and related business spinoff and app.

98.     Defendant Richards breached her fiduciary duty to Plaintiff Pirri by disclosing Plaintiff Pirri's communications concerning his idea for a dating website and app and related business spinoff and app to Defendant Cheek on or about October of 2008.

99.     Upon information and belief, Defendant Cheek then communicated Plaintiff Pirri's idea to Defendants Kickham, Raper and Cheek'd, Inc.

100.    This unlawful disclosure by Defendant Richards provided Defendants Cheek, Kickham, Raper and Cheek'd with all the information necessary to apply for, and obtain issuance of the '465 patent.

101.    Plaintiff Pirri's idea for a dating website and app belonged to Plaintiff Pirri exclusively such that only Plaintiff Pirri had the right to apply for a United States patent based on that idea.

102.    Because of Defendant Richards' breach of fiduciary duty, Plaintiff Pirri has been deprived of the benefits of a patent for his idea and the ability to monetize that patent.

103.    Because of Defendant Richards' breach of fiduciary duty, Plaintiff Pirri has been harmed in an amount to be established at trial, but in any event no less than $5,000,000.


**SIXTH CLAIM FOR RELIEF**
**(FRAUD)**

104.    Plaintiff Pirri repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

105.    Plaintiff Pirri created the idea for the dating website and app disclosed in U.S. Patent No. 8,543,465.

106.    Defendant Richards is a licensed clinical social worker.

107.    Defendant Richards treated Plaintiff Pirri as her patient at the Pederson Krag Center Inc. between September 2008 and May 8, 2013.

108.    Based on their relationship as licensed clinical social worker and patient, Defendant Richards owed Plaintiff Pirri a fiduciary duty, which included a duty to not disclose to third parties any communications she learned from Plaintiff Pirri during her treatment of Plaintiff Pirri and a duty to disclose any breaches of that duty to Plaintiff Pirri.

109.    During a series of sessions held in October of 2008, Plaintiff Pirri disclosed to Defendant Richards his idea for a dating website and app and related business spinoff and app.

110.    Defendant Richards disclosed Plaintiff Pirri's communications concerning his ideas for both the dating website and app and business related spinoff website and app to Defendant Cheek on or about October 2008.

111.    Defendant Richards knew that Defendant Cheek was taking steps to apply for a patent for the dating website and app.

112.    Defendant Richards knew that Defendant Cheek was also taking steps to build a business on Plaintiff's idea.

113.    Because Defendant Richards was Plaintiff Pirri's social worker and because Defendant Richards was the individual who disclosed Plaintiff's idea to Defendant Cheek without Plaintiff Pirri's consent, Defendant Richards had a duty to disclose to Plaintiff Pirri that Defendant Cheek was taking steps to steal Plaintiff Pirri's ideas and to build a business on Plaintiff Pirri's idea so that he could at least take steps to stop that conduct.

114.    Defendant Richards failed to disclose to Plaintiff Pirri that Defendant Cheek was taking steps to steal Plaintiff Pirri's ideas and to build a business on them. In fact, Defendant

Richards made false representations to Plaintiff Pirri that Defendant Cheek was not taking steps to steal Plaintiff Pirri's invention and to build a business on his idea.

115.   Because of Defendant Richards' failure to disclose the fact that Defendant Cheek was taking steps to steal Plaintiff Pirri's idea and to build a business on that idea and because of her intentional misrepresentation of these facts, Plaintiff Pirri was wrongfully prevented after issuance of the patent from obtaining rights to his idea and to build a business on that idea such that Plaintiff has suffered damages in an amount to be established at trial, but in any event no less than$5,000,000.


**WHEREFORE**, Plaintiff Pirri prays for judgment against Defendants as follows:

1.   Correction of the named inventors listed on the '465 patent under 35 USC § 256 by adding Mr. Alfred Pirri as an inventor.

2.   Shutting down both Defendants' Cheek'd website and app and Network'd website based on Defendants' unjust enrichment.

3.   Enjoining Defendants from making any statements claiming ownership of the '465 patent or any of the ideas or inventions disclosed in that patent, including, but not limited to, any future appearances on 'Shark Tank' or on the Oprah Winfrey Network.

4.   Disgorging all of Defendants' profits based on Defendants' unjust enrichment at Plaintiff's expense.

5.   Ordering all Defendants to pay restitution to Plaintiff Pirri based on their unjust enrichment at Plaintiff Pirri's expense.

6.    Ordering all Defendants to pay compensatory and punitive damages due to their tortious conduct committed against Plaintiff Pirri in an amount no less than $5,000,000;

7.    Awarding Plaintiff Pirri his costs and reasonable attorneys' and investigatory fees, expenses, costs, together with pre-judgment interest.

8.    Awarding Plaintiff Pirri such other and further relief as the Court may deem just and proper.


                                        Respectfully submitted,

Dated: January 7, 2019                  /*Steven R. Fairchild*/_____
                                        Steven R. Fairchild (SF 1994)
                                        **Fairchild Law, LLC**
                                        292 Powers Street, 1B
                                        Brooklyn, NY 11211
                                        (703) 994-0193
                                        steve@fairchildlegal.com

                                        *Attorney for Plaintiff Alfred Pirri, Jr.*