**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Alfred Pirri, Jr. | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No.** |
| | ) | |
| v. | ) | **1:19-cv-180** |
| | ) | |
| Lori Cheek, Locke Raper, | ) | |
| Charlie Kickham, Joanne Richards, | ) | |
| and Cheek'd, Inc | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEY FEES AND OTHER SANCTIONS**

---

FAIRCHILD LAW, LLC
Steven R. Fairchild (SF 1994)
292 Powers Street, 1B
Brooklyn, NY 11211
(703) 994-0193
steve@fairchildlegal.com


*Attorney for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................iv

PRELIMINARY STATEMENT.............................................................................................1

FACTUAL BACKGROUND..................................................................................................1

1.　Defendant Cheek's Actions Constitute Cyberbullying......................................1

2.　Defendant Cheek Sought Revenge.....................................................................2

3.　Defendant Cheek Has the Ability to Cause Immense Harm
　　Through Cyberbullying......................................................................................3

　　(a) Defendant Cheek Has The Social Media Skills...........................................3

　　(b) Defendant Cheek Is An Influencer.............................................................3

4.　Real-World Consequences of Cyberbullying......................................................3

　　(a) Defendant Cheek Damaged Plaintiff Pirri's Reputation and
　　　　Future Livelihood.....................................................................................4

　　　　(i) Defendant Cheek's Defamation..........................................................4

　　　　(ii) The harm from Defendant Cheek's words..........................................4

　　(b) Defendant Cheek Encouraged Public Retribution Against
　　　　Plaintiff Pirri............................................................................................6

　　(c) Defendant Cheek Targeted His Homosexuality..........................................7

　　(d) Defendant Cheek's Actions Violate Several New York
　　　　Criminal Statutes......................................................................................8

　　　　(i)  Harassment in the Second Degree
　　　　　　(NY CLS § 240.26 (3)).....................................................................8

　　　　(ii)  Aggravated Harassment in the Second Degree
　　　　　　(NY CLS § 240.30 (3)).....................................................................8

　　　　(iii)  Hate Crimes (NY CLS § 485.05)....................................................9

5.     None of This Behavior is Acceptable Litigant Behavior..................................................9

ARGUMENT

I.     This Court Should Deny Defendants' Motion as a Sanction for
       Defendant Cheek's Bad Faith Litigation.................................................................9

       A.     Defendant Cheek Litigated in Bad Faith.................................................10

       B.     Defendant Cheek Sought to Undermine the Judicial System.............................10

              i.     Defendant Cheek Sought to Undermine Plaintiff Pirri's
                     Right to a Fair Trial.................................................................11

              ii.    Defendant Cheek Sought to Undermine the Independent
                     Judiciary.................................................................12

       C.     Defendant Cheek's Actions are Sanctionable under
              New York Law.................................................................12

              i.     The Underlying Torts are Subject To
                     Punitive Damages.................................................................12

              ii.    Defendant Cheek's Tortious Actions Were Directed
                     to the Public.................................................................13

              iii.   Defendant Cheek Willfully Disregarded Plaintiff
                     Pirri's Rights.................................................................13

              iv.    Defendant Cheek Acted Intentionally.........................................14

              v.     Defendant Cheek Was Motivated to Usurp the
                     Justice System.................................................................14

       D.     Her Counsel Filed a Baseless Rule 11 Motion.......................................15

II.    This Court Should Deny Defendants' Motion Because It Would Be
       Unfair and Prejudicial To Plaintiff Pirri Without
       Additional Discovery.................................................................16

III.   This Court Should Deny Defendants' Motion Because Plaintiff
       Pirri's Actions Were Reasonable In Light of the Circumstances..........................17

    A.      Plaintiff Pirri had a reasonable basis for beginning this lawsuit........................17

        i.      Plaintiff Pirri was the first inventor..........................................17

        ii.     The Strange Inventorship Records of the '465 Patent...........................18

        iii.    Correspondence Between Defendant Cheek and
               Ms. Richards................................................................18

        iv.    Defendant Cheek's Website..................................................19

    B.      Plaintiff Pirri Respected Judicial Resources......................................20

    C.      Defendants' Conduct Was Unreasonable..........................................21

IV.    This Court Should Deny Defendants' Motion Because Their
       Arguments About a Multiplicity of Lawsuits Are Baseless...............................22

    A.      This Court Denied Consolidating the Lawsuits and Gave Leave to
           Plaintiff Pirri to File Multiple Lawsuits.................................22

    B.      Defendants Opposed Consolidating The Lawsuits.............................23

V.     Conclusion...........................................................................................23

# **TABLE OF AUTHORITIES**

## **Cases**

*Buckley v. Valeo*, 424 U.S. 1 (1976)............................................................................12

*Chambers v. Nasco, Inc.*, 501 U.S. 104 (1991)............................................................10

*Collins v. Willcox, Inc.*, 158 Misc. 2d 54 (Cty. Sup. Ct. 1992)....................................13

*Cox v. Louisiana*, 379 U.S. 559, 583 (1965)............................................................1, 15

*Dove v. Wash. Metro Area Transit Auth.*, 2005 U.S. Dist. LEXIS
     17955 (D.D.C. 2005)...........................................................................................15

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175 (S.D.N.Y. 2008)................................15

*Edwards v. Vemma Nutrition*, 2019 U.S. Dist. LEXIS 189949
     (D. AZ. Nov. 1, 2019)..........................................................................................10

*Goins v. McKeen*, 605 F.2d 947, 952 (6th Cir. 1979)...................................................11

*Hall v. Cole*, 412 U.S. 1 (1973).....................................................................................10

*Hamilton v. Third Ave. R. R. Co.*, 53 N.Y.25, 28 (1873)..............................................15

*Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979)...................................................1, 11

*Highmark Inc. v. Allcare Health Mgmt Systems*, 572 U.S. 559 (2014)........................16

*Ins v. Chadha*, 462 U.S. 919 (1983).............................................................................12

*Irvin v. Dowd*, 366 U.S. 81 S. Ct. 1639, 1642 (1961)..................................................11

*Koar v. United States*, 1997 U.S. Dist. LEXIS 15408 (S.D.N.Y. 1997)........................15

*Krug v. Pitass*, 162 N.Y. 154, 161 (1900)....................................................................15

*MCM Partners v. Boscarino*, 1993 U.S. Dist. LEXIS 10671 (N.D. Ill. 1993)..............10

*Nixon v. Fiztgerald*, 457 US 731 (1982).......................................................................12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545
    (S.Ct. 2014)...............................................................................................16

*Oehlhof v. Solomon*, 73 App. Div. 329, 333-334 (1902).............................................15

*Prozeralik v. Capital Cities Communs.*, 82 N.Y.2d 466, 479 (1993).....................13-14

*Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250, 254 (S.D.N.Y. 1986)........................13

*Toomey v. Farley*, 2 N.Y.2d 71, 83 (1956)...........................................................14-15

*Vassilades v. Garfinkle's, Brooks Bros*, 492 A2d 580, 593 (D.C. 1985)....................13

*Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)...................................................13-14

*Zaidi v. United Bank, Ltd.*, 194 Misc. 2d 1, *9 (Ct. Sup. Ct. 2002).............................13

## Statutes

28 USC § 1927...........................................................................................1, 16

35 USC § 285.............................................................................................1, 16

NY CLS § 240.26 (3).........................................................................................8

NY CLS § 240.30 (3).........................................................................................8

NY CLS § 485.05.............................................................................................9

## Other Authorities

Prosser and Keeton, Torts § 2 at 9 [5th Ed. 1984]........................................................14

10 The Works of Thomas Jefferson 404 n. (P. Ford ed. 1905)......................................12

Plaintiff Pirri respectfully submits this memorandum of law in opposition to Defendants' motion for attorney fees under 35 USC § 285 and 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

"'The very purpose of a court system is to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures.'" *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (quoting *Cox v. Louisiana*, 379 U.S. 559, 583 (1965) (Black, J., dissenting).

Defendants' motion should be denied because Defendant Cheek conducted a vindictive campaign of cyberbullying and defamation against Plaintiff Pirri. This violated the "calmness and solemnity of the courtroom according to legal procedures."

## FACTUAL BACKGROUND

An extended discussion of Defendant Cheek's outrageous actions is relevant and necessary for Plaintiff Pirri's rebuttal of Defendants' motion. Defendant Cheek's actions are fully documented in a state complaint before the Supreme Court of New York, *Pirri v. Cheek*, Index No. 160002/2019.[1]

1. ## Defendant Cheeks Action's Constitute Cyberbullying

A federal website defines "cyberbullying" as posting "or sharing negative, harmful, false, or mean content about someone else. It can include sharing personal or private information about someone else causing embarrassment or humiliation."[2]

---

[1] In support of this Opposition Memorandum, Plaintiff Pirri submits both the Declaration of Steven R. Fairchild ("Fairchild Decl.") and the Declaration of Alfred Pirri ("Pirri Decl."). The state complaint is included as Ex. A to the Fairchild Declaration.

[2] https://www.stopbullying.gov/cyberbullying/what-is-it - maintained by the US Department of Health and Human Services (last visited December 26, 2019)

A special concern about cyberbullying is that "[m]ost information communicated electronically is permanent and public" and a "negative online reputation" can impact one's employment.

The government website lists a number of common cyberbullying tactics[3]. These include (1) posting "rumors about someone online that are mean, hurtful, or embarrassing", (2) posting "mean or hateful names, comments, or content about...personal characteristics online", or (3) creating a "mean or hurtful webpage about someone."

Defendant Cheek did all of the above.

It began with a "Go-Fund Me" website to raise money for this patent inventorship lawsuit. However, this website became a public forum where she pilloried Plaintiff Pirri in retaliation for this lawsuit. She spread false rumors about his mental health. She also solicited and encouraged the general public to do the same.

## 2.      **Defendant Cheek Sought Revenge**

Defendant Cheek intended retaliation against Plaintiff Pirri. She posted online that she wanted to "'out' this case, this man and his law firm to the world". Fairchild Decl., Ex. A, ¶ 102.

Defendant Cheek hates Plaintiff Pirri. In an interview for Crain's New York Business, She is quoted as saying, "I don't know even know who I hate here" because Plaintiff Pirri has not yet appeared in court.[4]

Defendant Cheek's campaign for revenge was entirely motivated by her hate for Plaintiff Pirri.

---

[3] https://www.stopbullying.gov/cyberbullying/cyberbullying-tactics (last accessed December 26, 2019)

[4] Shark Tank Got Her Noticed - Then Her Nightmare Began, June 12, 2019, https://www.crainsnewyork.com/markets/shark-tank-got-her-noticed-then-her-nightmare-began) (last accessed October 24, 2019)

3.      **Defendant Cheek Has the Ability to Cause Immense Harm Through Cyberbullying**

      **(a) Defendant Cheek Has The Social Media Skills**

Defendant Cheek used her skills and contacts as a professional public relations specialist to destroy Plaintiff Pirri.

Defendant Cheek owns and operates a public relations firm, Cheek PR[5], which specializes in the tactics used against Plaintiff Pirri. The website's title says it all. "We. Get. Guerilla." A guerilla-style revenge campaign was used against Plaintiff Pirri.

The website also explains that the intent of Cheek PR is to "eliminate your competition." It further adds, "By saturating every relevant contact point with your message there will simply be too much noise for your competitors to be heard." Defendant Cheek did precisely all of that - against Plaintiff Pirri.

 The fight was not remotely fair.

      **(b) Defendant Cheek Is An Influencer**

Defendant Cheek is a famous woman who has appeared on numerous television shows. As of October 11, 2019 her twitter account, @loricheeknyc, has over 4,000 followers and her instagram, @cheekd, is followed by over 3,400. She has contacts with the news media and even Congress. By all accounts, she is an "Influencer."

By contrast, Plaintiff Pirri is a private man who has neither the fame nor connections of Defendant Cheek.

4.      **Real-World Consequences of Cyberbullying**

---

[5] https://www.cheekpr.com (last accessed, December 26, 2019)

The consequences of cyberbullying are real. The federal website warns that some "cyberbullying crosses the line into harmful or criminal behavior."[6] Defendant Cheek did that.

### (a) **Defendant Cheek Damaged Plaintiff Pirri's Reputation and Future Livelihood**

#### (i) **Defendant Cheek's Defamation**

Defendant Cheek sought to damage Plaintiff Pirri's reputation and future livelihood. She did this by perpetuating a lie about him being in mental facility.

For instance, Defendant sent a letter to Congressman Nadler where she stated that Plaintiff Pirri thought of "her idea while in a mental facility." This is recounted in a Tweet from @pacelattin who claims to be a friend of Defendant Cheek. Defendant Cheek reposted this Tweet, thus affirming the truth of the statement. Fairchild Decl., Ex.A, ¶¶ 117-120. Defendant Cheek personally met with Congressman Nadler and she even posted an online picture of herself at his office. Id, ¶¶ 121-127.

#### (ii) **The harm from Defendant Cheek's words**

The extent of the damage to Plaintiff Pirri is beyond measure.

First, it is a lie. Plaintiff Pirri was never a patient in a mental facility. Pirri Decl., ¶ 12. He attended therapy sessions at the Pederson-Krag outpatient facility.

Second, Plaintiff Pirri notarized his invention notes for this concept on September 18, 2006. Dkt 1, ¶ 30, Exh. B. This was over two years before he conveyed his idea to his therapist.

Third, it underscores the power difference between the litigants. Private individuals do not have personal and private access to members of Congress. Yet, Defendant Cheek obtained an audience. Put simply, her voice carries far more weight than Plaintiff Pirri's.

---

[6] https://www.stopbullying.gov/cyberbullying/what-is-it (last visited December 26, 2019)

Fourth, defaming an individual to a Congressman is different than venting about a case to a friend. Congressmen have significant local and national influence. We do not know how Congressman Nadler utilized this information. But it is clear from the circumstances that Defendant Cheek intended that it cause the most possible harm against Plaintiff Pirri.

Fifth, being in a "mental facility" brings to mind that Plaintiff Pirri was institutionalized in an inpatient psychiatric facility. The Complaint states Plaintiff Pirri's treatment occurred at Pederson Krag of Smithtown, New York. Dkt 1., ¶ 37. A simple google search for the facility would have revealed to Defendant Cheek that it is an outpatient facility.[7]

The differences between inpatient and outpatient treatment are widely discussed on many websites, but in short, inpatient care is 24-hour monitored care at a specialized medical facility, such as Bellevue Hospital[8]. In contrast, outpatient care is far less intensive and the patient resides at home.

This reputation damage is precisely what Defendant Cheek sought to inflict on Plaintiff Pirri. One commenter on her website, Mr. Steven Thrasher, wrote, "I get angry when **psychos** sue inventors and try to steal their ideas." Fairchild Decl., Ex. A,¶ 152. (emphasis added).

The term "psycho" is a slang pejorative term for people with mental disabilities who require inpatient mental treatment. According to www.dictionary.com, the word means (1) "a psychopathic or psychotic person" or (2) "a crazy or mentally unstable person."[9] Upon information and belief, Defendant Cheek 'liked' the comment by Mr. Thrasher. By doing so, she endorsed the false portrayal of Plaintiff Pirri as a "psycho" to the public.

---

[7] https://www.rehab.com/pederson-krag-outpatient/6205981-r (last accessed December 29, 2019)

[8] See, e.g., https://www1.nyc.gov/site/doh/health/health-topics/child-and-adolescent-mental-health-inpatient.page; https://med.nyu.edu/psych/affiliates/bellevue-hospital-center (last accessed December 29, 2019)

[9] https://www.dictionary.com/browse/psycho (last accessed December 29, 2019)

Her callous words caused harm. This kind of reputation damage has a significant impact on one's professional reputation and livelihood.

According to the ADA website[10], many myths persist about individuals with mental health conditions in the workplace. These include: (1) they do not recover, (2) they cannot work in stressful or demanding jobs, (3) they have weak personalities, (4) they pose a danger to others in the workplace, and (5) they cannot work until they are completely recovered.

All these stigmas are common. All are false.

Defendant Cheek intended to attach these mental health myths to Plaintiff Pirri. She told many people - entrepreneurs, Congressman Nadler, and the general public - that Plaintiff Pirri was a "crazy" man and had spent time in a mental facility. These false rumors would unfairly attach the stigmas of mental health conditions to Plaintiff Pirri. In turn, it would damage his employment prospects and future livelihood.

These and other actions give rise to claims for defamation and defamation *per se* in the state complaint.

### (b) Defendant Cheek Encouraged Public Retribution Against Plaintiff Pirri

Her campaign also encouraged public anger.

Aside from Mr. Thrasher's anger at "psychos", another commenter, Mr. Gerren Liles, wrote, "Nobody f****k with my Cheeks." Fairchild Decl., Ex. A,¶ 159. Upon information and belief, Defendant Cheek 'liked' this as well. Id., ¶ 160.

---

[10] https://adata.org/factsheet/health  Mental Health Conditions in the Workplace and the ADA, ADA National Network (last accessed December 26, 2019)

Plaintiff Pirri does not know who these people are. They are total strangers. Plaintiff Pirri cannot know their intentions, what they look like, or whether they intend to act on their anger. Fairchild Decl., Ex. A,¶ 161.

Plaintiff Pirri understood these to be threats. Pirri Decl., ¶ 14. As a result, Plaintiff Pirri fears for his life and property because total strangers are angry at him on account of Defendant Cheek's words and actions. Id., ¶ 16. Plaintiff Pirri does not know who else Defendant Cheek encouraged to retaliate against him. These and other actions give rise to claims for both the intentional and negligent infliction of emotional distress in the state complaint.

### (c) Defendant Cheek Targeted His Homosexuality

Defendant Cheek stated that she wanted to "out" Plaintiff Pirri. Defendant Cheek emphasized this word among all others. Fairchild Decl., Ex. A,¶ 101.

It is commonly understood in the English language that to "out" a person refers to reveal or expose someone's hidden homosexuality.[11]

The revelation of one's status as a homosexual is a deeply private and personal decision. Involuntarily being outed, or the threat to do so, can trigger a voluminous amount of emotional distress in a person. This is especially the case when the threats are part of an intentional cyberbullying campaign from a social media influencer against a private individual.

Plaintiff Pirri suffered years of emotional and physical violent persecution during his adolescent years on account of being homosexual. Pirri Decl., ¶¶ 2-4. Today, he is extremely private about this area of his life. Id., ¶ 6. It was categorically unfair of Defendant Cheek to target this part of his private life in a retaliation for a lawsuit.

---

[11] See, e.g, https://www.thefreedictionary.com/out, defining, "out" as "To expose (someone considered to be heterosexual) as being gay, lesbian, or bisexual." (last accessed, December 26, 2019)

Her words carry weight and now the public is against him. He fears for his life - a claim which is understandable given Defendant Cheek's social media presence, her stated intent, and Plaintiff Pirri's experience as a homosexual man.

These and other actions further support the claims for the intentional and negligent infliction of emotional distress in the state complaint.

### (d) **Defendant Cheek's Actions Violate Several New York Criminal Statutes**

#### (i)  **Harassment in the Second Degree (NY CLS § 240.26 (3))**

This law prohibits intentional actions that alarm another person and have no legitimate purpose. As detailed above, Defendant Cheek's actions alarmed Plaintiff Pirri.  Further, her actions were revenge for a lawsuit. This is not a legitimate purpose.

#### (ii)  **Aggravated Harassment in the Second Degree (NY CLS § 240.30 (3))**

This law prohibits actions which are intended to "harass, annoy, threaten or alarm another person" by threatening "strikes, shoves, kicks" or other "physical contact". Further, the action is connected to a belief of "disability or sexual orientation, regardless of whether the belief or perception is correct".

As detailed above, Defendant Cheek fostered a rumor that Plaintiff Pirri was crazy and formerly a patient in a mental facility. Mental conditions are considered disabilities under the Americans with Disabilities Act.[12]

Because of this rumor, several commenters posted angry, threatening comments on her website. Again, Defendant Cheek "liked" them. Whether or not Defendant Cheek intended these "likes" to be a threat of physical violence is for the fact finder to determine.

---

[12] See, e.g., the ADA website, https://adata.org/factsheet/health  Mental Health Conditions in the Workplace and the ADA, ADA National Network (last accessed December 26, 2019)

### (iii)  Hate Crimes (NY CLS § 485.05)

Paragraph 1(a) of the New York Hate Crimes statute forbids selecting a victim for criminal behavior based on a perception of the victim's sexual orientation or disability, regardless if that belief is correct. Paragraph (3) specifies that aggravated harassment in the second degree is considered a criminal offense for this statute. Paragraph 4 (c) specifies that "the term 'disability'" includes a "mental impairment that substantially limits a major life activity."

Defendant Cheek spread rumors that Plaintiff Pirri was in a mental facility. This prompted Mr. Thrasher - a total stranger - to "get angry when psychos sue inventors." His anger was focused on an incorrect perception that Plaintiff Pirri had a mental impairment. Again, his anger linked directly back to the false rumor that Defendant Cheek encouraged. Should the fact finder determine that aggravated harassment in the second degree is met, then Defendant Cheek violated this statute.

**5.**   **None of This Behavior is Acceptable Litigant Behavior**

Defendant Cheek violated the calmness and solemnity of the courtroom by taking her fight elsewhere. None of her behavior is acceptable. It is reprehensible and sanctionable.

Plaintiff Pirri proposed an amended complaint for this Court to fully explore and consider Defendant Cheek's outrageous conduct. However, this Court denied it. [Dkt 62]. Therefore, this Court has an incomplete picture of Defendant Cheek's actions and the harm they caused.

Notwithstanding that, for the following reasons, Defendants' motion should be denied.

### ARGUMENT

**I.**   **This Court Should Deny Defendants' Motion as a Sanction for Defendant Cheek's Bad Faith Litigation**

Defendant Cheek's public campaign of revenge is unacceptable as a matter a of law. Accordingly, this Court should deny Defendants' motion for attorney fees.

### A.      Defendant Cheek Litigated in Bad Faith

"[B]ad faith may be found not only in the actions which led to the lawsuit but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1 (1973). A "party may be sanctioned for abuses of processes occurring beyond the courtroom." *Chambers v. Nasco, Inc*., 501 U.S. 104 (1991). The "Supreme Court recently held that a federal court has inherent power to award [or deny] attorney's fees as a sanction for bad-faith out of court conduct by a litigant." *MCM Partners v. Boscarino*, 1993 U.S. Dist. LEXIS 10671, *14 (N.D. Ill. 1993) (citing, *Chambers*).

Out-of-court revenge is below the standards of proper litigation conduct. *See, e.g.*, *Edwards v. Vemma Nutrition*, 2019 U.S. Dist. LEXIS 189949, *21 (D. AZ. Nov. 1, 2019) ("The messages Edwards left on Boreyko's personal cell phone were, at the very least, unprofessional, inappropriate, and far from the standard of dignity and civility this Court expects from its litigants....The Court finds that Edwards's out-of-court conduct in personally leaving hostile messages for Boreyko weighs" against Edward's for the determination of attorney fees).

The Court in *Edwards* noted, "[S]ignificantly, Edwards does not deny that he left those messages for Boreyko." *Id.*, * 22. This case is the same - Defendant Cheek ***does not deny*** making her revenge outside of the courtroom.

However, the Court in *Edwards* merely dealt with harassing phone messages and text messages. Defendant Cheek's behavior is far more egregious and extreme.

### B.      Defendant Cheek Sought to Undermine the Judicial System

### i.      Defendant Cheek Sought to Undermine Plaintiff Pirri's Right to a Fair Trial

Defendant Cheek sought to undermine Plaintiff Pirri's right to a fair trial.

Defendant Cheek's retaliation campaign was intentionally crafted to destroy Plaintiff Pirri's reputation before the general public. Thus, she attempted to influence potential jurors.

The Complaint in this case was filed in January 2019 and contained various state claims for which a jury would be needed. [Dkt 1]. For these, the Complaint demanded a jury trial. Id.

A number of state claims were voluntarily withdrawn and this Court's order of June 13, 2019 dismissed all the remaining ones. [Dkt 41]. This left the sole issue of patent inventorship, which would no longer need a jury.

Defendant Cheek's revenge campaign began in March 2019. Fairchild Decl., Ex. A,¶ 101. For approximately three months, her campaign sought to communicate a distorted picture of Plaintiff Pirri to potential jurors.

"Our system of justice properly requires that civil litigants be assured the right to a fair trial." *Hirschop*, 594 F.2d. at 373. This requires an impartial jury. The Supreme Court's test is whether any juror "can lay aside his impression or opinion and render a verdict based on evidence presented in court." *Irvin v. Dowd*, 366 U.S. 81 S. Ct. 1639, 1642 (1961). *See also*, *Goins v. McKeen*, 605 F.2d 947, 952 (6th Cir. 1979) ("We believe that the instant case is one where deprivation of petitioner's constitutional right to a fair trial by an impartial jury may be presumed from the circumstances").

Press reports that are both inadmissible and strongly probative of one side are considered as unfairly influencing an impartial jury. *Goins,* 605 F.2d at 953. Defendant Cheek's statements

included numerous falsities ranging from his mental health to his "intent to steal" an invention that he came up with first. These are both inadmissible and strongly probative to one her side.

Although a jury was no longer needed as of the Court's order of June 13, 2019, it is clear that she attempted to a sway potential jurors and undermine Plaintiff Pirri's right to a fair trial. This is unacceptable litigant behavior.

<strong>ii.      Defendant Cheek Sought to Undermine the Independent Judiciary</strong>

Defendant Cheek sought Congressional influence in this lawsuit. She used her fame, power, and influence to obtain a direct audience with Congressman Nadler. There, she discussed this lawsuit, including defaming Plaintiff Pirri before a Congressman. Incredibly, she bragged about this on social media and even posted a picture of herself outside his office.

This was a clear attempt to undermine the independence of the judiciary and the Separation of Powers. "'The leading principle of our Constitution is the independence of the Legislature, executive and judiciary of each other, and none are more jealous of this than the judiciary.'" *Nixon v. Fiztgerald*, 457 US 731, 750 (1982), F31 (quoting, 10 The Works of Thomas Jefferson 404 n. (P. Ford ed. 1905)). The "'principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787'". *Ins v. Chadha*, 462 U.S. 919, 946 (1983) (quoting, *Buckley v. Valeo*, 424 U.S. 1, 124 (1976).

Defendant Cheek sought Congressional influence in this lawsuit. By doing so, she attempted to thwart the independent judicial system.

<strong>C.      Defendant Cheek's Actions are Sanctionable under New York Law</strong>

<strong>i.      The Underlying Torts are Subject To Punitive Damages</strong>

Intentional torts like, those committed by Defendant Cheek, are sanctionable with punitive damages under New York law. "Punitive damages are recoverable in all actions based upon tortious acts which involve ingredients of malice, fraud, oppression, insult, wanton or reckless disregard of one's rights, or other circumstances of aggravation, as a punishment of the defendant and admonition to others." *Collins v. Willcox, Inc.*, 158 Misc. 2d 54, 59 (Cty. Sup. Ct. 1992) (denying defendants' motion to dismiss punitive damages for the intentional infliction of emotional distress). Likewise, "punitive damages are well established in the law of defamation". *Zaidi v. United Bank, Ltd.*, 194 Misc. 2d 1, *9 (Ct. Sup. Ct. 2002).

### ii.     Defendant Cheek's Tortious Actions Were Directed to the Public

 "The standard for imposition of punitive damages in New York requires that the defendant's tortious activities be aimed at the public generally." *Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250, 254 (S.D.N.Y. 1986) (citing *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961).

Defendant Cheek's cyberbullying campaign intentionally solicited the public to assist in hurting Plaintiff Pirri. She published defamatory statements on her social media pages and her Go-Fund-Me page. Hateful comments from strangers followed.

### iii.     Defendant Cheek Willfully Disregarded Plaintiff Pirri's Rights

The purpose of punitive damages is to "'punish a person for outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights'". *Prozeralik v. Capital Cities Communs.*, 82 N.Y.2d 466, 479 (1993) (quoting *Vassilades v. Garfinkle's, Brooks Bros*, 492 A2d 580, 593 (D.C. 1985).

Plaintiff Pirri has a right to identify his sexual orientation to people of his own choosing. He has a right to an honest reputation in the community. He has a right to avoid unfair mental

health stigmas. He has a right to a livelihood. He has a right to live peacefully among the

community. He has a right to a fair trial. Defendant Cheek acted with either specific intent to

destroy his rights or with reckless disregard to the damage she caused to each of them.

### iv.   Defendant Cheek Acted Intentionally

Defendant Cheek acted intentionally. "Punitive damages are awarded in tort actions

'where the defendant's wrongdoing has been intentional and deliberate, and has the character of

outrage frequently associated with crime". *Prozeralik*, 82 N.Y.2d at 479 (quoting Prosser and

Keeton, Torts § 2 at 9 [5th Ed. 1984]). Such circumstances include "'aggravation or outrage,

such as spite or 'malice' or a fraudulent or evil motive on the part of the defendant, or such a

conscious and deliberate disregard of the interests of others that the conduct may be called

willful or wonton.'" Id.

Defendant Cheek acted with revenge because she hated Plaintiff Pirri. Her actions were

continuous and sustained for a period of several months. She also owns and operates a social

media PR firm which gave her the skills to create an elaborate and sophisticated cyberbullying

campaign. She knew exactly what she was doing and the damage that it would cause.

She even posted a picture online of herself outside Congressman Nadler's office.

Fairchild Decl., Ex. A,¶ 127. For her, this was all a game to brag about on social media.

### v.   Defendant Cheek Was Motivated to Usurp the Justice System

"Punitive or exemplary damages have been allowed in cases where the wrong

complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to

punish the defendant but to deter him, as well as others who might otherwise be so prompted,

from indulging in similar conduct in the future." *Walker*, 10 N.Y.2d at 403. (citing *Toomey v.*

*Farley*, 2 N.Y.2d 71, 83 (1956); *Krug v. Pitass*, 162 N.Y. 154, 161 (1900); *Hamilton v. Third Ave. R. R. Co.*, 53 N.Y.25, 28 (1873); and, *Oehlhof v. Solomon*, 73 App. Div. 329, 333-334 (1902).

Defendant Cheek wanted revenge outside of the courtroom. She would never have done any of this but for Plaintiff Pirri suing her. They have never actually met and all her defaming statements referred to the lawsuit. There was no other motivation than retaliation.

Her actions sought justice outside "the calmness and solemnity of the courtroom according to legal procedures.'" *Cox v. Louisiana*, 379 U.S. at 583, (Black, J., dissenting). These repugnant actions undermined "very purpose of a court system." *Id.*

### D.     Her Counsel Filed a Baseless Rule 11 Motion

Counsel for Defendant Cheek threatened Rule 11 sanctions for the entirety of this lawsuit. He finally filed a motion for sanctions on June 17, 2019 which this Court denied. [Dkts 42 and 51, respectively].

"The making of a frivolous Rule 11 motion can itself result in sanctions against the movant." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting *Koar v. United States*, 1997 U.S. Dist. LEXIS 15408, *2, n.2 (S.D.N.Y. 1997)); see also, *Dove v. Wash. Metro Area Transit Auth.*, 2005 U.S. Dist. LEXIS 17955, * 10 (D.D.C. 2005).

Counsel for Defendants had constructive knowledge of Defendant Cheek's activities. Defendant Cheek's egregious website was directed to fundraising for his legal bills. Plus, he was quoted in at least one article.[13] Counsel for Defendants knew, or should have known, about Defendant Cheek's out of court intentional torts against Plaintiff Pirri. Yet he did nothing. Instead, he filed a Rule 11 motion against Plaintiff Pirri and his counsel.

---

[13] "How U.S. Patent and Litigation Abuse Can Deter Small Inventors: The Story of Cheekd", but Eileen McDermott, published April 16, 2019, available at https://www.ipwatchdog.com/2019/04/16/u-s-patent-litigation-abuse-can-deter-small-inventors-story-cheekd/id=108328/ (last access October 13, 2019)

The frivolous Rule 11 motion happened ***at the very same time*** that Defendant Cheek conducted her retaliation campaign. In light of his own client's concurrent outrageous actions, filing a frivolous Rule 11 motion is unacceptable and should be sanctioned by this Court.

## II.   This Court Should Deny Defendants' Motion Because It Would Be Unfair and Prejudicial To Plaintiff Pirri Without Additional Discovery

Defendants seek attorney fees under both 35 USC § 285 and 28 U.S.C. 1927. 35 USC § 285 allows attorney fees to the prevailing party for "exceptional cases." An 'exceptional' case is "simply one that stands out from others with respect to the others". *Highmark Inc. v. Allcare Health Mgmt Systems*, 572 U.S. 559, 563 (S.Ct. 2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 553 (S.Ct. 2014). The district court may consider either the overall merits of the litigants and "the unreasonable manner in which the case was litigated." *Id.*

A central element to a determination of attorney fees under 35 U.S.C. § 285 is the conduct of *both* parties. Defendant Cheek conducted a series of intentional torts against Plaintiff Pirri in retaliation for the present lawsuit.

Likewise, 28 U.S.C. 1927 only sanctions an unreasonable multiplicity of lawsuits. The underlying new case is based solely on Defendant Cheek's intentional torts in retaliation for the lawsuit. She does not deny this - a factor that the *Edwards* court weighed "significantly". Yet, neither Plaintiff Pirri nor this Court, has a full record of what Defendant Cheek has done. There has been no discovery.

The need for further discovery is one of the reasons that this Court denied Plaintiff Pirri's amended complaint. This Court stated, "Adding new claims of a fundamentally different character would upend the existing case management plan and put off substantially the date when Pirri's existing claim to inventorship could be litigated." [Dkt 62, at 8].

Plaintiff Pirri sought relevant documents pertaining to Defendant Cheek revenge campaign in a document request served on Defendants. This request occurred prior to this Court's denial of the proposed amended complaint and Defendants answered after the Court's decision. A copy of Defendants' response is included as Fairchild Decl., Ex B.

Defendants' Counsel objected to providing the details about her revenge campaign. Counselor Goodwin stated, "Defendants object to this request as irrelevant to plaintiff's claim, unduly burdensome, and not proportional to the needs of the case." Id. at 7-8.

Again, Defendants took the position that the inventorship claim is irrelevant to the defamation claim - a position they contradict in their present motion. Notwithstanding that, Defendants objected to Plaintiff Pirri's discovery requests on the scope of damage inflicted by Defendant Cheek.

Plaintiff Pirri cannot properly defend against Defendants' motion without having had an opportunity to explore the damage that Defendant Cheek caused.

It would be unfair and prejudicial to Plaintiff Pirri for this Court to grant Defendants' motion with an incomplete record of Defendant Cheek's egregious revenge campaign.

III.   **This Court Should Deny Defendants' Motion Because Plaintiff Pirri's Actions Were Reasonable In Light of the Circumstances**

A.   **Plaintiff Pirri had a reasonable basis for beginning this lawsuit**

Plaintiff Pirri agreed to this Court's recommendation to consolidate a motion to withdraw the complaint with prejudice and summary judgment. [Dkt 89].

Nonetheless, Plaintiff Pirri had a reasonable basis to begin this lawsuit.

i.   **Plaintiff Pirri was the first inventor**

Plaintiff Pirri had the invention idea as early as 2006. Subsequently, he had the inventorship plans notarized in 2006, for both the dating website and a professional networking website. These were both included in the complaint. [Dkt 1, Exh B and C]. He pursued the ideas, having a patent application search conducted before losing his job. [Dkt 1, ¶¶ 31-32].

He told these ideas to his therapist, Ms. Richards, who relayed them to someone named Lori without his knowledge or consent. Further, Plaintiff Pirri, Ms. Richards, and Defendant Cheek all lived in the same geographical area at this time. Years later, the invention showed up on Shark Tank and was now claimed by Defendant Cheek.

### ii.   The Strange Inventorship Records of the '465 Patent

The inventor's oath submitted by Defendant Cheek to the USPTO did not match her public story. If her public story were true, then other people should have been listed as inventors. Yet, they were omitted. One thing was clear - Defendant Cheek either lied to the USPTO or lied to the public.

It also confirmed Plaintiff Pirri's story that there was far more to the inventorship of the '465 patent than what Defendant Cheek had told the USPTO.

### iii.   Correspondence Between Defendant Cheek and Ms. Richards

Defendants have at all times maintained Defendant Cheek and Ms. Richards do not know each other. Their actions prior to this lawsuit suggested something else.

Communications between my predecessor counsel and Ms. Richards revealed that she had corresponded with Defendant Cheek before this lawsuit. A copy of this exchange is included as Fairchild Decl., Ex. C. Incredibly, Ms. Richards refused to turn over these emails. She claimed that "it reveals nothing". Yet, if it was indeed nothing, then she would have no problem releasing

them to Plaintiff Pirri to avoid a lawsuit. Equally incredible, she had no problem with

surrendering her therapist license in the same email. This created suspicion that Ms. Richards

had something to hide.

Likewise, both Defendant Cheek submitted a declaration under the penalty of perjury

stating that there had been no communication with her and Ms. Richards prior to the lawsuit.

[95-2, at 5, ¶ 4; 95-2, at 7, ¶ 5]. Yet, Ms. Richards told a different story.

The truth? Both Defendant Cheek and Ms. Richards were lying ***about something***.

Plaintiff Pirri finally obtained this correspondence during discovery. However, given their

refusal to turn their correspondence over, it was reasonable to believe that this document would

be withheld absent a formal lawsuit.

### iv.    Defendant Cheek's Website

Defendant Cheek mentioned that she produced to my predecessor counsel a record of a

Go-Daddy website. It shows a domain registry of "YOUVEBEENCHEEKD.COM" as of March

2008.

This somehow is supposed to be evidence that Defendant Cheek had conceived of online

dating in reverse before Plaintiff Pirri. This is nonsense.

First, the website does not prove any significant element of the claimed invention. For

instance, a simple search for the word "website" in "all fields" on the USPTO's patent search

tool[14] reveals 166,273 hits. A similar search on the USPTO's published patent application search

tool [15] reveals 221,433 hits.

In other words, the USPTO gets many patent applications which discuss "websites."

---

[14] http://patft.uspto.gov/netahtml/PTO/search-bool.html (last accessed December 28, 2019)

[15] http://appft.uspto.gov/netahtml/PTO/search-bool.html (last accessed December 28, 2019)

Second, Defendant Cheek was registering versions of her last name for a long time. The domain registration history for "CHEEKED.COM" goes back to June 2005. Fairchild Decl., Ex. D. This was far earlier than Defendant Cheek claims was the invention time period. Clearly, she just wanted to use her last name on a website - so she reserved it.

Moreover, she abandoned "YOUVEBEENCHEEKD" in 2009 and tweaked the website's name once again by reserving CHEEKD in April 2009. Fairchild Decl., Ex. E. Again, this shows a desire to use her last name in a business, but the precise nature of it was in flux.

Without more, registering the 'YOUVEBEENCHEEKD.COM" only proves the 2008 variant of using her last name on a website. Defendant Cheek produced nothing more until after this lawsuit commenced.

### B.      **Plaintiff Pirri Respected Judicial Resources**

Plaintiff Pirri respected judicial resources throughout this litigation. Plaintiff Pirri l conducted numerous withdraws, which obviated the need for full briefing and helped conserve judicial resources.

A number of state claims were withdrawn prior to Defendants' partial motion to dismiss. [Dkt 32; Dkt 36]. Ms. Richards was voluntarily released as a co-defendant. [Dkt 45]. The subpoena that was served on Pederson Krag was withdrawn when it became known that the wrong one had been served. [Dkt 67]. Counsel for Pederson Krag was given a two-week document production deadline extension to respond to the same subpoena. [Dkt 63-7].

This case took an unexpected turn with Defendant Cheek's out-of-court campaign of revenge. This Court denied consolidating the patent case with the newly arising defamation case. [Dkt 62]. A few weeks later, this Court denied a request for a two-week extension of discovery to

both re-serve a new subpoena on Pederson-Krag and allow time for a deposition on Ms. Richards with as much documents as reasonably possible.

Plaintiff Pirri was put in an awkward position of continuing with multiple lawsuits in two different courts or streamlining them by withdrawing the present patent lawsuit. The answer came because Plaintiff Pirri both feared for this life (due to Defendant Cheek's revenge campaign) and suffered COPD. [Dkt 74; Dkt 74-1]. In short, one single lawsuit was the priority to Plaintiff Pirri given his circumstances, plus it conserved judicial resources.

Plaintiff Pirri postponed his deposition due to medical reasons. Ultimately, all depositions were canceled when he filed the motion to withdraw with prejudice while still in discovery. [Dkt 74]. Canceling the depositions saved all parties unnecessary expenses and emotional turmoil. All these actions were in respect for judicial resources.

The withdraw with prejudice was ultimately opposed. [Dkt 79]. Nonetheless, this led to Plaintiff Pirri agreeing to this Court's recommendation to consolidate his  prior motion to withdraw with prejudice and Defendants' desire for summary judgment. [Dkt 89].

**C.**   **Defendants' Conduct Was Unreasonable**

As discussed at length throughout, Defendant Cheek met Plaintiff Pirri's desire to streamline the litigation with an out-of-court revenge campaign. This sanctionable behavior resulted in a series of intentional torts and constitutes bad-faith litigation. At the same time, her counsel filed a frivolous Rule 11 motion. Together, they are especially unreasonable.

**IV.**   **This Court Should Deny Defendants' Motion Because Their Arguments About a Multiplicity of Lawsuits Are Baseless**

Defendants argue that the multiplicity of lawsuits is grounds for attorney fees. This is a baseless argument.

Not a single one of the cases cited in Defendants' motion deals with intentional torts done as revenge for the fondational lawsuit.

Defendant Cheek's retaliation campaign was unprecedented bad faith litigation. She inflicted a number of intentional torts upon Plaintiff Pirri. These are actionable offenses under New York law and necessitate further discovery and litigation.

Incredibly, Defendant Cheek has never denied conducting her revenge campaign.

A.     **This Court Denied Consolidating the Lawsuits and Gave Leave to Plaintiff Pirri to File Multiple Lawsuits**

The multiplicity of lawsuits is a baseless argument when this Court gave leave to Plaintiff Pirri to file multiple lawsuits.

This Court summarized the holding of the parties first lawsuit as follows. "The Court found that it lacked subject matter jurisdiction over Pirri's claims and explained that Pirri could either refile his claims in state court or bring them in federal court so long as he could adequately plead federal jurisdiction. See 17 Civ. 7089, Dkt 64 at 11-12." [Dkt 62 at 1].

Plaintiff Pirri followed the Court's instruction and filed a new Complaint before this Court. [Dkt 1]. This Complaint alleged similar state claims with a claim to correct the inventorship of the '465 patent. Id. The latter claim gave the case federal jurisdiction.

This second case took a bizarre turn with Defendant Cheek's out-of-court revenge and Plaintiff Pirri sought to amend the complaint. This would have ***reduced the number*** of lawsuits.

This Court denied it, stating, "'This Court has determined the facts underlying the defamation claims and the inventorship claims rely on unrelated facts that occurred nearly a decade part." *Id*. at 7. The Court noted that "Pirri's existing claim for correction of inventorship,

22

as alleged, occurred sometime between 2006 and 2010; whereas the facts giving rise to the defamation all occurred in 2019." *Id.*

This Court noted that the "legal tests for Pirri's claims implicate different facts." These "claims clearly turn on different events occurring at vastly different time periods. As such, ***they are not properly resolved in the same lawsuit***." *Id.* (emphasis added).

This Court gave leave to Pirri to file in another court, stating, "Pirri, of course, is at liberty to pursue such claims in a separate claim, in a court of competent jurisdiction. But he cannot do so here". *Id.* at 8.

This Court concluded the underlying factual and legal disputes are too different. Accordingly, this Court gave Plaintiff Pirri leave to pursue another lawsuit in another court. Plaintiff Pirri did that.

### B.    Defendants Opposed Consolidating The Lawsuits

Defendants now complain about multiple lawsuits, but previously opposed consolidating the lawsuits. [Dkt 59]. Again, this would have ***reduced the number*** of lawsuits.

Defendants opposed it, stating, '"[T]he facts supporting the inventorship and defamation claims are unrelated in two substantial ways. First, the facts underlying those claims are vastly different in time" and hence, "do not "substantially overlap," or "derive from a common nucleus of operative fact." *Id.* at 5.

Further, he wrote, "[T]he second way in which plaintiff's inventorship and defamation claims are unrelated is their reliance on unrelated facts and different elements of proof. The inventorship action relies on allegations concerning plaintiff's conception and Cheek's appropriation of plaintiff's idea, whereas the defamation action relies on statements made by

Cheek and requires findings, inter alia, as to whether allegedly defamatory statements were published to a third party without privilege or authorization, whether there was fault amounting to at least negligence that caused special harm or defamation per se, and the quantum of damages, if any." *Id.* at 6-7.

Defendants cannot have it both ways. Plaintiff Pirri tried to consolidate the lawsuits, which Defendants fought tooth-and-nail to keep out of this lawsuit. Now, they complaint about the multiplicity of lawsuits.

This Court should hold Defendants to their prior argument to maintain the separation of the lawsuits as reasonable. Accordingly, this Court should dismiss Defendants' current concern about the multiplicity of lawsuits.

V.      **Conclusion**

Cyberbullying is a plague on modern society. It was a matter of time before it infected the courthouse. The time is now. This Court should deny Defendants' motion because cyberbullying and out-of-court revenge are inappropriate litigant behavior.

For this and the other foregoing reasons, Plaintiff Pirri respectfully requests that this Court deny Defendants' motion.

Dated: January 6, 2019
        New York, NY                        Respectfully submitted,

                                            FAIRCHILD LAW, LLC
                                            */s/Steven Fairchild*
                                            Steven Fairchild
                                            292 Powers Street, 1B
                                            Brooklyn, NY 11211
                                            T: (703) 994-0193
                                            steve@fairchildlegal.com