IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALFRED PIRRI, JR.,**<br><br>**Plaintiff**<br><br>-against-<br><br>**LORI CHEEK, ET AL.,**<br><br>**Defendants** | **Civil Action No. 1:19-cv-00180-PAE** |

**DEFENDANTS CHEEK AND CHEEKD INC.'S REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES**

Defendants Cheek and Cheekd Inc. ("defendants") herein reply to the Memorandum of Law in Opposition to Defendants' Motion for Attorney Fees ("Opp. Br."). Submitted herewith in support of its motion is the second Declaration of Lori Cheek ("Second Cheek Decl.") and the second Declaration of Lawrence Goodwin ("Second Goodwin Decl.").

**I.    INTRODUCTION**

As noted in defendant's opening brief, discovery in September 2019 showed, and plaintiff conceded, that no reasonable juror could find that plaintiff is entitled to be listed as a joint inventor of the Cheek patent.  Order of Dec. 23, 2019 (Dkt. 91).  Plaintiff tried to hide this fact by seeking to "withdraw" his complaint without stating the reason why, so that he could continue to assert that he was the inventor of the Cheek patent in a defamation action

1

filed in New York state court. (*See* Fairchild Decl. Exh. A, ¶¶ 9-92).[1] Accordingly, defendants moved the Court for defendants' attorney's fees incurred after discovery.

Plaintiff bases his opposition to the present motion on the notion that <u>untrue</u> and obviously <u>unproved allegations</u> of wrongdoing on the part of Ms. Cheek can excuse plaintiff's litigation abuses. There is no support for this, legal or otherwise. But even if there were (and there is none), plaintiff's allegations of wrongdoing on the part of defendants are <u>demonstrably false</u>, as discussed below.

Like a broken record, plaintiff's tone-deaf opposition repeats many of the same, irrelevant, frivolous and inaccurate accusations such as those found, for example, in the letter of October 22, 2019 from Mr. Fairchild to the Court (Dkt. 71), and in the Motion for Voluntary Withdrawal of October 29, 2019 (Dkt. 74). He once again relies these false allegations in an attempt to portray plaintiff as the victim, when the victims in this case are defendants who have had to deal with plaintiff, his completely unfounded allegations and abusive litigation since 2017. It is <u>plaintiff's</u> conduct that is being litigated at this point in the present case.

In his opposition, Plaintiff alleges, again, (1) that he "was the first inventor" – after admitting in this case that he was not entitled to be named as an inventor (Dkt.91); (2) that he "fears for his life" – after this Court found that to "border on frivolous" (Dkt. 79, p. 2); (3) that he needs more discovery – after this Court explicitly confirmed that discovery was

---

[1] With his concession, that he is not entitled to claim inventorship of the Cheek patent, the foundation for the defamation complaint cannot be supported and the defamation complaint should be – <u>but has not been</u> – withdrawn. Both 22 NYCRR § 130-1.1, and the New York Rules of Professional Conduct, Rule 3.1, state that the court may sanction frivolous conduct defined, *inter alia*, as "assert[ing] material factual statements that are false."

The Court should be aware that plaintiff improperly attempted service of the defamation complaint upon Ms. Cheek four days ago, on January 9, 2020 (by leaving it on the stairs outside her apartment building), and apparently intends to proceed with allegations it knows to be false.

complete (Transcript of Dec. 16, 2019 (Goodwin Decl. Ex. 4), p. 9), and (4) that Ms. Cheek targeted plaintiff's homosexuality and mental health, omitted evidence, violated several criminal statutes and committed fraud – which are demonstrably untrue.  These allegations are as incredible as those in the complaints in the First Case and the present case.  They are unproven (in fact, unfounded and false), and there is simply no legal support for the notion that such allegations can be used to excuse plaintiff's litigation abuses in this case.

## II. UNPROVEN ALLEGATIONS OF WRONGDOING DO NOT EXCUSE PIRRI'S LITIGATION ABUSES

Plaintiff bases his opposition, for the most part, on the proposition that untrue and obviously unproven allegations of wrongdoing by defendants can excuse Pirri's litigation abuses.  Plaintiff's allegations of misconduct by defendants have not been litigated or established.  There is no support in any of the cases cited by plaintiff, nor is the undersigned otherwise aware of any support, for the notion that bare allegations such as these would excuse plaintiff's litigation conduct.

At Opp. Br. 10, plaintiff cites and discusses cases supposedly for the proposition that unproven allegations of wrongdoing can excuse sanctionable conduct.  These cases provide no such support, and plaintiff's characterizations of them are, to be charitable, misleading.  Plaintiff cites *Chambers v. Nasco, Inc.*, 501 US 32,[2] 57 (1991) for the proposition that a "party may be sanctioned for abuses of processes occurring beyond the courtroom," Op. Br. at 10 (underscoring added).  Plaintiff cropped the quote from *Chambers*, which stated that a "party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." 501 U.S. 32 at 57.  That case does not say or imply that unproved allegations of wrongdoing can excuse sanctionable conduct.  Also at Op. Br. 10,

---

[2] Incorrectly cited by Plaintiff as *Chambers v. Nasco, Inc.*, 501 U.S. 104.

plaintiff modified a quote from *MCM Partners v. Boscarino*, 1993 U.S. Dist. LEXIS 10671, *14 (N.D. Ill. 1993) stating that a "court has inherent power to award [or deny] attorney's fees as a sanction for bad-faith out of court conduct by a litigant." (Underscoring added). Apparently, plaintiff's proposed modification – "award [or deny] attorney's fees" – was intended to characterize the case as holding that allegations of wrongdoing can excuse sanctionable conduct, but there is no support whatsoever in that case for such modification. *MCM Partners* simply cited *Chambers* for the proposition that the court has the inherent power to sanction out-of-court bad-faith conduct. *MCM Partners* at *14.  Similarly, in *Edwards v. Vemma Nutrition*, 2019 U.S. Dist. LEXIS 189949, *21 (D. AZ. Nov. 1, 2019), the issue was whether abusive communications from plaintiff Edwards to Boreyko, a founder and officer of defendant Vemma Nutrition, would support a finding of attorney's fees, not whether they would serve to excuse improper conduct of the opposing party.  And in none of these cases did the court rely on bare, unproven allegations to deny a grant of attorney's fees.

**III.  OTHER LEGAL THEORIES**

At Op. Br. 11, plaintiff asserts that Cheek attempted to deny him a fair jury trial.  This is nonsense.  Plaintiff cites *Goins v. McKeen*, 605 F.2d 947, 952 (6th Cir. 1979) for the proposition that "Press reports that are both inadmissible and strongly probative of one side are considered as unfairly influencing an impartial jury."  In *Goins*, a newspaper article was published during the criminal defendant's trial containing information about the defendant's offer to plead to a lesser count.  The article thus was inadmissible and prejudicial.  605 F.2d at 953.  This, of course, has nothing to do with the present case.  Moreover, plaintiff's conclusion that Cheek's statements, *i.e.*, the statements of an opposing party, are inadmissible is baffling, but beside the point.  Defendants never did anything that could be construed as an attempt to deny plaintiff a fair trial, particularly since the case was to be tried to the Court, not

4

a jury,[3] nor is there any authority that such unproven allegations would excuse improper conduct.

Plaintiff next cites The Works of Thomas Jefferson, among other things, for the proposition that the letter to Congressman Nadler (Second Cheek Decl., Ex. 1) was an attempt to "thwart the independent judicial system." Op. Br. at 12. According to plaintiff, Ms. Cheek "discussed this lawsuit, including defaming Plaintiff Pirri before a Congressman." *Id*. The statement is bewildering and especially remarkable because, as discussed below, the letter says <u>nothing</u> about plaintiff or this case.

Beginning at Op. Br. 8 and 12, plaintiff alleges that his litigation conduct should be excused because defendants violated criminal statutes, and because he is entitled to punitive damages. Plaintiff cites no authority, nor is there any, for using these absurd, unproven and untrue accusations to avoid sanctions.

## IV. <u>THE ALLEGATIONS AGAINST DEFENDANTS ARE FALSE</u>

Plaintiff's allegations in his opposition are no more credible than those in his complaints in the First Case and present case, and the Court should not presume that they are the least bit credible to help plaintiff avoid fees for sanctionable conduct. A brief response to each of these allegations follows.

In plaintiff's "Factual Background" (Op. Br. at 1-9) he asserts that Cheek "bullied" Pirri by claiming that Cheek falsely stated that Pirri was treated at a "mental facility." (*Id*., p. 4). First, the statement plaintiff refers to was not even Cheek's. It was a tweet from someone called "@pacelattin." (Fairchild Ex. A, ¶ 119). Further, the statement is hardly different from plaintiff's own admissions. Plaintiff complains that he "was never a patient <u>in a mental</u>

---

[3] Plaintiff is not entitled to a jury trial on the claim for correction of inventorship under 35 U.S.C. 256. *Shum v. Intel Corp*., 499 F. 3d 1272 at 1279 (Fed. Cir. 2007).

5

facility. . . . He attended therapy sessions at the Pederson-Krag outpatient facility." Op. Br. at 4 (underscoring added). But in his Complaint, he essentially concedes the point: "Plaintiff Pirri decided to seek counseling at the mental health facility at Pederson Krag Center Inc., located at 11 Route 111, Smithtown, New York, where he was treated by Defendant Richards between September 2008 to May 2013." Complaint (Dkt. 8), ¶ 37 (underscoring added). In fact, the present case was based entirely on Plaintiff's allegation that he divulged his invention to Richards while he was in this mental health facility for his sessions with Richards.

Plaintiff also asserts that "Defendant sent a letter to Congressman Nadler where she stated that Plaintiff Pirri thought of 'her idea while in a mental facility'" (Op. Br. at 4); that "Defendant Cheek personally met with Congressman Nadler" (*id*.); that Cheek defamed "an individual to a Congressman," intending "that it cause the most possible harm against Plaintiff Pirri" (*id*. at 5); that Cheek "told many people - entrepreneurs, Congressman Nadler, and the general public - that Plaintiff Pirri was a 'crazy' man and had spent time in a mental facility" (*id*. at 6); that Cheek had "a direct audience with Congressman Nadler … [where] she discussed this lawsuit, including defaming Plaintiff Pirri before a Congressman" (*id*. at 12); and that "Cheek sought Congressional influence in this lawsuit." (*Id*.)

These allegations are in bad faith and are believed to be sanctionable in their own right. The letter to Congressman Nadler, referred to by plaintiff, does not even mention Pirri or this case. *See* Second Cheek Decl., Ex. 1 (Letter of Feb. 27, 2019 to Jerry Nadler). In her declaration, Ms. Cheek states that the letter was signed by her and six other inventors and suggested changes to the patent system. (Cheek Second Decl., ¶ 7). The letter does not mention Mr. Pirri, or otherwise allude to him or this case in any way. (*Id*.) Ms. Cheek has never physically seen Congressman Nadler, met with him or spoken to him in her life. (*Id*., ¶ 8). The letter was mailed to him and hand delivered to his West Village office. (*Id*.)

6

In April of 2019, Ms. Cheek started a Go Fund Me campaign to help raise funds to defend this lawsuit. (*Id*., ¶ 9). As stated in her declarations (Cheek Decl. ¶¶ 3, 4, and Second Cheek Decl. ¶ 9), plaintiff's lawsuits effectively destroyed her business, Cheekd Inc.

Plaintiff accused Ms. Cheek of outing his sexual orientation. This again is false. Before being accused of this, Ms. Cheek "never even thought about Pirri's sexual orientation and never mentioned it." (*Id*., ¶ 10). Ms. Cheek continues: "I have never, at any time, made a disparaging remark regarding Pirri's sexual orientation, and never would. I stated in my social media account that I intended to 'out' this case, this man and the law firm for filing this frivolous attack on me and my business." (*Id*.).

It is also noteworthy that Mr. Pirri, himself, made his sexual orientation publicly known in the first paragraph of his Complaint in *Alfred Pirri, Jr. v. Manhattan Luxury Automobiles, Inc. d/b/a Lexus Of Manhattan*, No. 115480/08 (N.Y. Super. Ct. filed 2008) (*see* Goodwin Decl. Ex. 5 (Complaint, ¶ 1: "Alfred Pirri is a homosexual male citizen of the State of New York and resides in Suffolk County, NY."))

Finally, plaintiff variously and incorrectly attributes to Cheek a statement by another third party, (Steven Thrasher (Op. Br., pp. 5, 6))

V. **MISCELLANEOUS MATTERS**

Beginning at Op. Br. 16, plaintiff asserts that sanctions against him would be unfair without additional discovery, including discovery pertaining to alleged defamation. The Court has made it clear that discovery in this case was closed (Dec. 16 Transcript (Goodwin Decl. Exh. 4) at p. 9), and that the defamation claims could not be brought in the present case. (Dkt. 62). Thus, plaintiff's false allegations against Ms. Cheek, naturally, remain unproven. And the fact that plaintiff admits that discovery is necessary regarding his defamation

allegations only confirms that such allegations are not established facts upon which the Court can rely to excuse plaintiff's abuses.

Beginning at Op. Br. 18, plaintiff complains that correspondence between Cheek and Richards was withheld from discovery. This is not true (Goodwin Decl. ¶ 10). Moreover, if plaintiff believed that documents were improperly withheld by defendants, he could have raised the issue with the Court. He did not do so.

Beginning at Op. Br. 16, plaintiff raises objections to defendants' request for sanctions under 28 U.S.C. 1927. Plaintiff seems to understand the statute to be directed to abuses resulting from multiple lawsuits. Of course, that is incorrect.

Finally, plaintiff asserts that he had a reasonable basis for beginning this lawsuit. Op. Br. at 17. In doing so, he repeats the same allegations that he admitted he could not prove. But even if he had a good faith basis for bringing this case (and he did not), defendants are only asking for attorney's fees incurred after discovery in this case, when it became objectively clear that it was impossible for plaintiff to prove his case.

## VI. CONCLUSION

Plaintiff's opposition brief is yet another example of litigation conduct warranting sanctions. Accordingly, defendants respectfully request that the Court grant defendants' attorney's fees from plaintiff and/or his counsel incurred from October of 2019 through the present.

Dated: New York, New York

January 13, 2020

Respectfully submitted,

LAWRENCE B. GOODWIN, PLLC

By: Lawrence B. Goodwin, Esq.
525 East 86th Street, St. 5H
New York, NY 10028
Telephone: (212) 988-1076
Facsimile: (646) 619-4161
Email: LawrenceGoodwinPC@gmail.com
*Attorney for Defendants Cheek and Cheekd Inc.*